LITTLE *v.* BARRY.

LUMBERING CONTRACT — MODIFICATION — CONSTRUCTION—BREACH.
   Where a lumbering contract, which originally provided that
   defendants should stock plaintiffs' mill and that plaintiffs
   should saw for defendants exclusively, is modified to per-
   mit plaintiffs to "manufacture their own stock," the parties
   should adjust by agreement the portion of stock each shall
   thereafter furnish; and where no such adjustment is made,
   and no notice is given defendants as to the portion required
   from them, no action will lie for breach of their contract.

Error to Benzie; Aldrich, J. Submitted October 4,
1900. Decided November 13, 1900.

*Assumpsit* by John Little, John R. Little, and Thomas
Little, copartners as Little & Sons, against Thomas W.
Barry and Thomas Kenny, copartners as Barry & Kenny,
for the breach of a lumbering contract. · From a judg-
ment for plaintiffs, defendants bring error. Reversed.

*McAlvay & Grant*, for appellants.

*D. G. F. Warner* and *George G. Covell*, for appellees.

MONTGOMERY, C. J. On the 10th of April, 1893, the
defendants were the owners of a tract of timber adjacent
to Edgewater, in Benzie county. On that date a contract
was entered into between the parties as follows:

"That said parties of the first part, for and in consider-
ation of the covenants and agreements on the part of the
second parties, hereinafter mentioned, hereby covenant
and agree to and with the said parties to manufacture for
them, at Edgewater, lumber for the term of four years
from on or about May 1, 1894, and shingles for a term of
five years from said date; to saw said second parties' logs
into lumber and shingles of such grades as they may direct
from time to time, and deliver over the rail of a vessel

said manufactured lumber and said shingles, properly packed and branded; and the said first parties further agree to saw for no other parties, or allow their mill to be used to saw for other parties, during the time above specified.

"The said second parties, in consideration of the above covenants, hereby covenant to and with the said first parties to stock their mill at Edgewater as follows: For the lumber mill, for the term of four years from on or about May 1st, at the rate of two million feet per year, or eight million in all; for the shingle mill, for the term of five years from said date, such an amount of logs as will be required to keep two hand machines running during the running season of each year. To pay said first parties for the lumber properly manufactured, and delivered over the rail of a vessel, at the rate of three dollars and twenty cents per thousand feet, board measure, for the hardwood lumber, and two dollars and twenty-five cents per thousand feet for the hemlock and pine lumber; and to pay for the shingles properly sawed, packed, and branded, and delivered over the rail of a vessel, as follows: Cedar shingles, firsts, $92\frac{1}{2}$ cents per thousand; cedar shingles, seconds, 55 cents per thousand; pine shingles, firsts, $82\frac{1}{2}$ cents per thousand; pine shingles, seconds, 55 cents per thousand."

Some delay occurred in getting the shingle mill into operation. On October 17, 1894, the contract was modified as follows:

"That the said second party is hereby relieved from furnishing and delivering under the agreement hereto attached, and of which this is a part, more than one million feet of logs per year, reserving the privilege and right to furnish the entire amount mentioned in said contract, according to the terms thereof. The said first party is no longer bound by that clause in said contract which prohibits them from using their lumber mill to saw for other parties during the time for carrying out said contract, shingle mill excepted, for the manufacture of their own stock only. But it is understood that nothing herein contained shall change or affect said contract in any other particular than is expressly mentioned herein."

This action is brought for a breach of contract in supplying the shingle mill with timber according to the terms

of the contract. It was conceded on the trial that defend-
ants had fully complied with their contract to furnish logs
for the sawmill. The plaintiffs recovered a judgment for
$3,510, and defendants bring error.

It is contended by defendants' counsel that the supple-
mental agreement relieved the defendants from supplying
stock for shingles, at least to this extent: That the contract
left the parties to adjust by agreement the proportion of
stock each would furnish the shingle mill, and in the ab-
sence of any agreement, and in the absence of any notice
by plaintiffs as to the amount of shingle stock they pro-
posed to manufacture each year, the defendants would be
left to use their own judgment as to stocking the shingle
mill. The circuit judge took a different view, and held
that the original contract made it the duty of defendants
to furnish such a quantity of shingle timber as would be
required to keep two hand machines running, and that
under the amended contract their duty continued. This
ruling presents the question of the greatest difficulty in
the case. The amendatory contract is not as clear in its
terms as could be desired. Plaintiffs' counsel state their
position as follows:

"Under the agreement the court justly held that, so far
as the shingle mill was concerned, it was agreed 'that the
plaintiffs might manufacture shingles for themselves, but
it was not modified to permit the plaintiffs to manufacture
for any other persons than the defendants.' While the de-
fendants contend that the plaintiffs could manufacture
their own stock of shingles as they desired, it would be
absurd for any person to say that under this contract they
could keep their mill running, manufacturing their own
shingles at all times, and ignore this contract as to the
manufacture of shingles for the defendants, as they un-
dertake to contend in their brief. Defendants virtually
say in their brief that the plaintiffs might have used this
mill continually for manufacture of their own stock. If
such was a fact, they would be under no obligations
whatever to manufacture any shingles for the defendants;
and, if this contract or agreement can be so construed, we
frankly admit that the plaintiffs have no case, and had no

case when it was tried, and that the plaintiffs have been in error in their understanding of the same, and that the court and jury were in error at the time of the trial."

This concession is not, in our view, too broad, when it is considered that the owner of timber must make preparation to get out the timber some months in advance. How are we able to say that the plaintiffs did not reserve the right to manufacture shingles on their own account for any considerable portion of the time without reading it into the contract? It is in evidence that they did use the shingle mill for some portion of the time in sawing their own shingles. In doing so they were plainly acting upon the express authority given by the amendatory contract, and as plainly they were putting it out of their power to manufacture shingles for defendants up to the full capacity of the mill. At what point, then, did plaintiffs' right to continue the manufacture of shingles on their own account cease? It clearly was a right inconsistent with a duty to manufacture to the full capacity of the mill for defendants, and we think it equally clear that the obligation of defendants did not extend to furnishing for manufacture material which the plaintiffs were not bound to manufacture when delivered. If the plaintiffs had given notice to the defendants of the amount of shingle timber desired, it would have become defendants' duty to furnish it within the limits of the capacity of the mill; but, in the absence of such notice, we are unable to say that the defendants were in default, and, judging from the plaintiffs' concession, it is to be assumed that no such notice was given. In any view, the charge of the court stated the defendants' obligation too broadly.

As the view expressed apparently disposes of the case, we do not deem it necessary to discuss the other questions presented.

Judgment reversed, and a new trial ordered.

The other Justices concurred.